UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JONATHAN D. M.[1],                     )
                                       )
                    Plaintiff,         )
                                       )
        v.                             )        Case No. 3:22-cv-778
                                       )
KILOLO KIJAKAZI,                       )
Commissioner of Social Security,       )
                                       )
                    Defendant.         )

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the

Commissioner filed by the plaintiff, Jonathan M., on September 14, 2022. For the following

reasons, the decision of the Commissioner is **AFFIRMED.**

*Background*

The plaintiff, Jonathan M., filed an application for Disability Insurance Benefits and

Supplemental Security Income on April 10, 2020, alleging a disability onset date of October 27,

2018. (Tr. 73-74). The Disability Determination Bureau denied Jonathan M.'s applications

initially on December 4, 2020, and again upon reconsideration on June 22, 2021. (Tr. 73-77).

Jonathan M. subsequently filed a timely request for a hearing on August 6, 2021. (Tr. 41). A

hearing was held via telephone on December 15, 2021, before Administrative Law Judge (ALJ)

Margaret O'Grady. (Tr. 12-40). Vocational Expert (VE) Jacquelyn Wenkman testified at the

hearing. (Tr. 33-39). Following the hearing, the ALJ issued an unfavorable decision on January

6, 2022. (Tr. 93-108). The Appeals Council denied review making the ALJ's decision the final

decision of the Commissioner. (Tr. 1-6).

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.

At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Jonathan M. had a continuous 12-month period in which he did not engage in substantial gainful activity. (Tr. 98).

At step two, the ALJ determined that Jonathan M. had the severe impairment of Parkinson's disease. (Tr. 99).

At step three, the ALJ concluded that Jonathan M. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 99). The ALJ found that no medical evidence reflected diagnostic findings that satisfied any listed impairment. (Tr. 99). The ALJ considered whether the severity of Jonathan M.'s impairment met or medically equaled the criteria of Listings 11.00 and concluded that it did not. (Tr. 99).

After consideration of the entire record, the ALJ then assessed Jonathan M.'s residual functional capacity (RFC) as follows:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(a) except no climbing ladders, ropes, and scaffolds; no work at heights or with hazards; occasional climbing of ramps and stairs, balancing, stooping, crouching, kneeling, and crawling; frequent pushing and pulling with the left arm and leg, including use of foot controls; and frequent handling and fingering with the left hand. The claimant can stand/walk 4 hours in a workday; sit 6 hours in a workday; and lift/carry 20 pounds occasionally and 10 pounds frequently.

(Tr. 99-100). The ALJ found that Jonathan M.'s medically determinable impairment could reasonably be expected to cause some of the alleged symptoms. (Tr. 101). That said, she found that the Jonathan M.'s statements related to the intensity, persistence, and limiting effects of the symptoms conflicted with the medical evidence and other evidence in the record. (Tr. 101).

At step four, the ALJ found that Jonathan M. could perform past relevant work as a

customer service representative. (Tr. 103-104). Consequently, the ALJ found that Jonathan M. had not been under a disability, as defined in the Social Security Act, from October 27, 2018, to the date of the decision. (Tr. 25).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported her findings with substantial evidence and if there have been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). Yet "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to individuals who can establish a "disability" under the Social Security Act. The claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to

last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A).** The Social

Security regulations enumerate the five-step sequential evaluation to be followed when

determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§**

**404.1520, 416.920.** The ALJ first considers whether the claimant is presently employed and

"doing . . .  substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b).** If he is, the

claimant is not disabled, and the evaluation process is over. If he is not, the ALJ next addresses

whether the claimant has a severe impairment or combination of impairments that "significantly

limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c),**

**416.920(c)**; *see **Williams v. Colvin***, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ

must consider the combined effects of the claimant's impairments). Third, the ALJ determines

whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R.**

**§ 401, pt. 404, subpt. P, app. 1.** If it does, then the impairment is acknowledged by the

Commissioner to be conclusively disabling. Yet if the impairment does not so limit the

claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity"

and the physical and mental demands of his past work. If, at this fourth step, the claimant can

perform his past relevant work, he will be found not disabled. **20 C.F.R. §§ 404.1520(e),**

**416.920(e).** That said, if the claimant shows that his impairment is so severe that he cannot

engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish

that the claimant, considering his age, education, job experience, and functional capacity to

work, is able to perform other work and that such work exists in the national economy. **42 U.S.C.**

**§ 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f);** *see **Biestek v. Berryhill,*** 139 S. Ct. 1148

(2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the

private market-survey data underlying his opinion regarding job availability does not

categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Jonathan M. has requested that the court remand this matter for additional proceedings. In his appeal, Jonathan M. offers two arguments in favor of remand. First, he contends that the ALJ failed to properly address SSR 85-15 and the effects of stress on his ability to communicate effectively in a skilled job. Second, Jonathan M. contends that the ALJ erred in weighing the medical opinions of his treating sources.

First, Jonathan M. argues that the ALJ's determination that he could return to work as a customer service representative was flawed because she failed to adequately address his subjective symptoms regarding how stress exacerbated his physical impairments in accordance with SSR 85-15. Citing *Lancellotta v. SHHS*, 806 F.2d 284 (1st Cir. 1986). According to Jonathan M., stress intensified his Parkinson's symptoms which increased his hand tremors and hindered his ability to effectively communicate orally. Jonathan M. contends that the ALJ failed to address how these difficulties would affect his ability to maintain full-time employment as a customer service representative, which required high level communication skills.

An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). Still, an ALJ must explain her evaluation with specific reasons supported by the record. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). Under SSR 16-3p, an ALJ must assess the claimant's subjective symptoms rather than assessing his "credibility."

The ALJ first must determine whether the claimant has a medically determinable impairment that reasonably could be expected to produce her symptoms. SSR 16-3p, 2016 WL 1119029, at *2. Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting

effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2016 WL 1119029, at *2. An individual's statements about the intensity and persistence of the pain may not be disregarded because they are not substantiated by objective medical evidence. SSR 16-3p, 2016 WL 1119029, at *5. In determining the ability of the claimant to perform work-related activities, the ALJ must consider the entire case record, and the decision must contain specific reasons for the finding. SSR 16-3p, 2016 WL 1119029, at *4, 9.  The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the factors below:

(i)     The individual's daily activities;
(ii)    Location, duration, frequency, and intensity of pain or other symptoms;
(iii)   Precipitating and aggravating factors;
(iv)    Type, dosage, effectiveness, and side effects of any medication;
(v)     Treatment, other than medication, for relief of pain or other symptoms;
(vi)    Other measures taken to relieve pain or other symptoms;
(vii)   Other factors concerning functional limitations due to pain or other symptoms.

*See* **20 C.F.R. §404.1529(c)(3).**

The ALJ must justify her assessment with "specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). Moreover, "the ALJ must explain her subjective symptoms evaluation in such a way that allows [the Court] to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014); *see* SSR 16-30, 2017 WL 5180304, at *10 (Oct. 25, 2017) (The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.").

The ALJ provided an adequate rationale to build a logical bridge between the evidence in the record, Jonathan M.'s subjective symptoms, and her ultimate decision on his residual

functional capacity. As discussed by the ALJ, despite Jonathan M.'s diagnosis of Parkinson's disease, the medical record illustrated that his symptoms were well controlled with medication. (Tr. 102, 312, 435). Despite Jonathan M.'s subjective reports that he had debilitating tremors in his left hand and problems recalling words, the ALJ noted that medical records reflected only a slight tremor and no speech difficulty during an exam in March 2020. (Tr. 101, 313). The ALJ acknowledged that Jonathan M. reported that his tremors increased with stress during an exam in January 2020. Though, the ALJ also noted that Jonathan M.'s subsequent exams were predominately normal, and he reported reduced symptoms with his medication in March 2021. (Tr. 102). Even so, the ALJ still determined that additional limitations were warranted beyond what was suggested by the state agency consultants. (Tr. 103). Therefore, it cannot be said that the ALJ failed to properly consider Jonathan M.'s subjective symptoms because the ALJ's decision provided examples illustrating reasoned consideration. *See **Burmester v. Berryhill***, 920 F.3d 507, 510 (7th Cir. 2019).

Jonathan M. argues that the ALJ's determination that he could perform past relevant work as a customer service representative, a field highly concentrated in communication skills, illustrated that she failed to properly account for his physical symptoms. Yet Jonathan M. provided no evidence to suggest that his left-hand tremors or the fact that he stuttered a few times when stressed impeded his ability to work as a customer service representative, nor has he provided evidence that the ALJ's limitations would not accommodate his physical symptoms. Further, Jonathan M. offered no medical opinion stating that increased restrictions due to situational stress was necessary. *See **Gedatus v. Saul***, 994 F.3d 893, 904 (7th Cir. 2021) ("A fundamental problem is [the plaintiff] offered no opinion from any doctor to set [restrictions] greater than those the ALJ set."). Instead, Jonathan M. attempts to support his contention by

referencing his own statements that when stressed or anxious his tremors intensified, he wrestled with recalling words, and he stuttered a few times. (Pl.'s Br. at 14, referring to Tr. 32, 291). True, SSR 85–15 addresses the effects of stress on the ability to work, which it notes is highly individualized. Yet as explained above, the ALJ was not required to take Jonathan M.'s self-reported symptoms at face value, particularly when they conflicted with other evidence in the record.

Next, Jonathan M. contends that remand is warranted because the ALJ erred in finding the medical opinions of his treating sources unpersuasive. Debra Behmlander, RN, BSN, and Andrea Bearden, DNP, NP-C, noted that Jonathan M. was likely unemployable due to his condition. However, the ALJ found the treatment notes unpersuasive because their assessment was "vague and lack[ed] a function-by-function analysis." (Tr. 103). According to Jonathan M., the ALJ erred by failing to sufficiently explain why she found his treating source opinions unpersuasive.

ALJs have an obligation to develop the record fully and fairly in order to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Otis S. v. Saul*, No. 1:18-cv-372, 2019 WL 7669923, at *2 (N.D. Ind. Dec. 19, 2019) *quoting* *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014). An ALJ "cannot simply cherry-pick facts supporting a finding of non-disability while ignoring evidence that points to a disability finding." *Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020) (internal quotes omitted). The Social Security Administration's previous regulations entitled the opinions of certain physicians to controlling weight based on their status as a claimant's treating physician, however, the new regulations have done away with this requirement. *See* **20 C.F.R. § 404.1520c** ("We will not defer or give any specific evidentiary

weight, including controlling weight, to any medical opinion(s)…including those from your

medical sources"). Instead, ALJs must consider all medical opinions based on factors set out by

the Social Security Administration with supportability and consistency being the most important

factors for the ALJ to discuss. ***Kaehr v. Saul***, No. 3:19-cv-1171, 2021 WL 321450, at *3 (N.D.

Ind. Feb. 1, 2021).

A medical opinion is defined as "a statement from a medical source about what you can

still do despite your impairment(s) and whether you have one or more impairment-related

limitations or restrictions in the following abilities":

> (i)    Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii)   Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii)  Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (iv)   Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

**20 C.F.R. § 404.1513(a)(2)**. Neither Behmlander's nor Bearden's notes constituted a medical

opinion. The treatment note asserted that Jonathan M. had difficulties typing and was likely

unemployable, but it provided no statement related to his functional limitations. The note was

also lacking any indication regarding what Jonathan M. still could do despite his impairments or

whether he had restrictions in his abilities to complete the normal physical demands of work, as

required to constitute a medical opinion. As a result, the ALJ did not have to find the note

persuasive. *See **Robert B. v. Comm'r of Soc. Sec.***, No. 21-CV-1352, 2023 WL 2664268, at *8

(S.D. Ill. Mar. 28, 2023) (where the court held the ALJ "properly discounted" a doctor's

conclusory statement when it contained no functional limitations.).

Nevertheless, the ALJ still addressed the treatment notes and her decision in finding them unpersuasive was supported by the evidence in the record. The ALJ noted that the evidence in the medical record showed that Jonathan M.'s tremor symptoms were well controlled with medicine, and that he had "largely intact strength, gate, and balance." (Tr. 102, 103, 312). The ALJ considered the fact that Jonathan M. retained significant functional abilities, such as the ability to cook, drive, clean the house, walk 10 city blocks (30-40 minutes), work part-time as a janitor, do his own laundry, shop, and use his cell phone and computer. (Tr. 102). The ALJ also explained that Jonathan M.'s most recent medical exams revealed that his medication was working well, his tremors were well controlled, and he had no side effects due to the medication. (Tr. 101, 102). Overall, Behmlander's and Bearden's treatment notes did not support the conclusion that Jonathan M. could not work in any capacity. Thus, the ALJ did not err in finding the notes unpersuasive.

*Conclusion*

The court finds that the decision of the ALJ is supported by substantial evidence and that the decision, adopted by the Commissioner, was reasonable in light of the testimony and evidence. Based on the foregoing reasons, the decision of the Commissioner is **AFFIRMED**.

ENTERED this 5th day of July, 2023.

/s/ Andrew P. Rodovich
United States Magistrate Judge